[Civ. No. 5430. Third Appellate District.—November 9, 1935.]

AUDREY E. RICHARDS, Petitioner, v. R. J. WHEELER et al., as Trustees, etc., Respondents.

[Civ. No. 5462. Third Appellate District.—November 9, 1935.]

MAE MYERS, Petitioner, v. R. J. WHEELER et al., as Trustees, etc., Respondents.

[Civ. No. 5463. Third Appellate District.—November 9, 1935.]

DOLORES C. McCANN, Petitioner, v. R. J. WHEELER et al., as Trustees, etc., Respondents.

Langdon & Tope and J. Leroy Johnson for Petitioners.

Tom B. Quinn, City Attorney, and Clarence A. Grant, Assistant City Attorney, for Respondents.

THOMPSON, J.—These proceedings were consolidated for hearing. Separate petitions for writs of *mandamus* were filed by the widows of three deceased members of the fire department of the city of Stockton to compel the Trustees of the Relief and Pension Fund of that city to pay their claims for death benefits which accrued by the terms of an ordinance which was enacted pursuant to the alleged authorization of the charter of that city "to provide a pension and relief fund for policemen and firemen". The claims were rejected on the ground that the ordinance exceeded the express or implied authority conferred by the charter in attempting to provide for death benefits. Demurrers to the petition were filed on the ground that each fails to state facts sufficient to constitute a cause of action.

It is alleged that Melvin A. Richards, the husband of one of the petitioners, died January 26, 1934, as the result of an automobile accident which did not occur in the performance of his duties as a fireman. George Francis McCann, the husband of another petitioner, died May 30, 1935, from a heart ailment occurring at a time when he was not actively engaged in his duties as a fireman, and Ralph Myers, the husband of the third petitioner died January 21, 1935, as the result of an operation for hernia which it is alleged occurred as a result of his employment as a fireman. Each petitioner is the widow of one of these deceased firemen. It is further alleged the respondents are the duly appointed trustees of the Relief and Pension Fund of Stockton, which was created and

is maintained pursuant to law, and which fund contains a sum in excess of $100,000, from which the claims may be paid; that Stockton is governed by a freeholders' charter, which was adopted and ratified July 2, 1923 (Stats. 1923, p. 1321); that section 58, article V, of the charter provides for "a pension and relief fund for policemen and firemen"; that pursuant to the charter authorization therefor the city council adopted Ordinance No. 1278, on June 14, 1932, which provides for the retirement of firemen and policemen for disability or upon attaining a specified age, upon part pay; for the creation of a pension and relief fund by applying thereto a portion of the fixed salaries of such employees; for the selection of a board of trustees to handle and disburse the fund, and for death benefits which are doubled in the event of an accidental death occurring before the retirement of the employee. The ordinance provides for these death benefits in the following language: "Sec. 6 (a) Natural Death Benefit. In the event a member dies before retirement on a service pension, his beneficiary shall receive Five Thousand ($5,000.00) Dollars. (b) Accidental Death Benefit. In the event a member dies from accident before retirement on a service pension, his beneficiary shall receive Five Thousand ($5,000.00) Dollars in addition to the benefit provided under Sec. 6 (a)." It also appears that the husband of each petitioner was employed with the city as an active fireman at the time of his death, not having been retired from his service; that the claims were duly presented for payment for the respective sums alleged to be due the beneficiaries, and rejected. These petitions were then originally filed in this court to compel the trustees of the pension and relief fund to allow and pay the claims. To each petition a demurrer was filed as above stated.

In support of these demurrers the respondents claim that the death benefit feature of Ordinance No. 1278 is illegal and void as an exercise of excess authority alleged to have been conferred by section 58 of article V of the Charter of Stockton, and that each petition therefore fails to state facts sufficient to warrant the issuing of the writ of *mandamus* prayed for.

The authority to provide for pensions and relief of policemen and firemen employed by a chartered city, is conceded to be a municipal affair. (*Klench* v. *Board of Pension Fund Commrs.*, 79 Cal. App. 171 [249 Pac. 46]; *Popper* v.

*Broderick,* 123 Cal. 456 [56 Pac. 53]; *Burke* v. *Board of Trustees,* 4 Cal. App. 235 [87 Pac. 421].)

█ It is also conceded that the provisions contained in the charter of a municipality for the relief and pensioning of its policemen and firemen are not in contravention of article IV, section 31, of the Constitution prohibiting a gift of public money. (*Fessier* v. *Campbell,* 2 Cal. (2d) 638 [42 Pac. (2d) 1020]; *O'Dea* v. *Cook,* 176 Cal. 659 [169 Pac. 366]; *Pennie* v. *Reis,* 80 Cal. 266 [22 Pac. 176].) █ We also recognize the fact that *authorized* legislation providing for the relief and pensioning of policemen and firemen and the dependent members of their families is upheld on the theory that it amounts to a mere increase of compensation for service. (*O'Dea* v. *Cook, supra;* 43 C. J., p. 813, secs. 1407 and 1492; 1 Dillon's Municipal Corporations, p. 748, sec. 430; 2 McQuillin's Municipal Corp., 2d ed., p. 206, sec. 529.) Nor do we question the right of a municipality by duly authorized legislation to provide for the pensioning and relief of its firemen and policemen by means of accident or life insurance, the cost of which is deemed to be a part of their compensation for service. This is merely recognizing the application of good modern business methods in the affairs of municipalities. The peace of the inhabitants and security of property in our cities and towns depend to a considerable extent upon the efficiency of policemen and firemen. They are engaged in hazardous pursuits. Violent death and unavoidable accidents constantly menace them in the performance of their duties. It is essential they should receive adequate compensation and feel an assurance that they and their dependents will be reasonably cared for in the event of unforeseen accident or death. The insurance of such employees of a municipality as a part of their compensation for service should be encouraged.

█ It does not follow that a chartered municipality may provide for such insurance by ordinance unless it is authorized so to do. In construing section 58 of article V of the Stockton Charter to determine whether the city was authorized by ordinance to incur obligations to pay death benefits to the heirs of deceased firemen, we are compelled by the well-recognized rule of law to construe the language of the charter strictly, and if there is a doubt regarding the authority conferred thereby, we must weigh that doubt against the theory

of a delegation of the authority. In 1 McQuillin's Municipal Corporations, (2d ed.), page 919, section 368, it is said in that regard:

"Only such powers and rights can be exercised under grants of the legislature to corporations, whether public or private, as are clearly comprehended within the terms of the act or derived therefrom by necessary implication, regard being had to the objects of the grants.

"Since municipal powers are required to be conferred in plain, unambiguous terms, the general well-settled rule of construction is that a doubtful power is a power denied."

To the same effect are the following authorities: *Oro Electric Corp.* v. *Railroad Commission,* 169 Cal. 466 [147 Pac. 118]; *Kellar* v. *City of Los Angeles,* 179 Cal. 605 [178 Pac. 505]; *City of Long Beach* v. *Lisenby,* 175 Cal. 575 [166 Pac. 333]; *Miller* v. *City of Los Angeles,* 185 Cal. 440 [197 Pac. 342]; 18 Cal. Jur., p. 801, sec. 107.

Applying the foregoing rules of construction, we are constrained to hold that the charter provision authorizing the city of Stockton to "provide a pension and relief fund for policemen and firemen and other officers and employees of the city", does not expressly nor by necessary implication authorize the adoption of the ordinance upon which the petitioners rely, creating an obligation to pay death benefits to the beneficiaries of these employees.

In the recent case of *Fessier* v. *Campbell,* 2 Cal. (2d) 638 [42 Pac. (2d) 1020], the Supreme Court appears to have determined that section 58, article V, of the Charter of Stockton, which is involved in these proceedings, neither expressly nor by necessary implication authorized the city council to obligate the city to pay death benefits to the heirs or beneficiaries of its deceased firemen or policemen. The court said in that regard:

"By its contract, the city has undertaken to pay at least the accidental death benefits when death is due to the employment, and which may be a large part of the cost of such insurance. Its action in this respect is purportedly pursuant to the power vested in it by section 58 of article V of the city charter. *That section does not expressly include the right to provide for death benefits, nor is an implication of its inclusion necessary in order to execute the power vested in the city.* If the framers of the charter intended that the city

114

should become obligated for the payment of death benefits, the matter could easily have been included.''

The language of the Supreme Court which we have italicized for emphasis was undoubtedly used with reference to the established rule of law regarding the powers of municipal corporations which is uniformly accepted as correct by all text-writers. That rule is concisely stated in 1 McQuillin's Municipal Corporations, (2d ed.), page 910, section 367, as follows:

''The only powers a municipal corporation possesses and can exercise are: (1) Those granted in express terms; (2) Those necessarily or fairly implied in, or incident to, the powers expressly granted; and (3) Those essential to the declared objects and purposes of the municipality, not merely convenient, but indispensable.''

The petitioners assert that because the city of Stockton enacted an ordinance as early as 1901, providing for the payment of death benefits to the beneficiaries of its policemen and firemen, which was amended from time to time, but which amended ordinance remained in force at the time of the adoption of the charter in 1923, it was deemed to have been continued in force as a binding obligation on the city, even after the adoption of the charter. We think not.

It has been held that specific reference in a charter to an existing general statute with the apparent intention of adopting it as a portion thereof has the effect of making that law a part of the charter. (*Ex parte Lemon*, 143 Cal. 558 [77 Pac. 455, 65 L. R. A. 946]; 18 Cal. Jur. 767, sec. 79.) This rule has not been extended so as to apply it to ordinances of a municipality which exist at the time of the adoption of a charter. But assuming that the same rule does apply to city ordinances, there was no reference in the Stockton Charter to existing city ordinances regarding the pensioning of policemen or firemen. It must therefore be assumed that by an omission to refer to such existing ordinances, section 58 of article V of the Charter which purports to delegate all the authority which the city is to exercise in that regard, necessarily supersedes ordinances previously existing regarding that subject which are in violation of, or which exceed the authority conferred by the charter. Moreover, the ordinance upon which the petitioners rely in this proceeding. was adopted in 1932, long after the charter became effective.

The former ordinances were repealed by implication (*Burke v. Board of Trustees, etc.*, 4 Cal. App. 235 [87 Pac. 421]), and the last-mentioned ordinance is ineffectual in so far as it purports to enlarge on the authority conferred upon the city in that regard.

 It has been repeatedly held that a pension granted by a municipality to its employee is not a contractual obligation to which he acquires a vested right, but, on the contrary, that such pension may be terminated at will by either express or implied revocation thereof. (*Clarke* v. *Police & Health Insurance Board*, 123 Cal. 24 [55 Pac. 576]; 54 A. L. R., p. 943, note.)

 Nor may it be said the general law which was enacted by the state in its sovereign capacity authorizing municipalities under specified circumstances to pension policemen and firemen (Stats. 1905, p. 412; 1 Deering's Gen. Laws of Calif. of 1931, p. 1200, Act 2592) aids the petitioners in this proceeding. No reference to such law was made in the charter provision and the petitioners seek a remedy in this proceeding only against the Board of Trustees of the Relief and Pension Fund of the City of Stockton. The general law on that subject has no application. The authority to issue the writs demanded must be found in the express or implied language of the charter provision.

On the authority of *Fessier* v. *Campbell, supra,* the demurrers are sustained and the writs are denied.

Pullen, P. J., and Plummer, J., concurred.