José M. Gallardo, en su carácter de Comisionado de Instrucción de Puerto Rico, peticionario, *v.* R. Agraít Aldea, Juez de la Corte de Distrito de Arecibo, y Víctor Rosario, demandados.

Núm. 76.—*Sometido:* Enero 18, 1941. *Resuelto:* Febrero 19, 1941.

*Hon. Procurador General George A. Malcolm y A. Torres Braschi, Subprocurador Auxiliar,* abogados del peticionario; *R. Agraít Aldea, pro se; Virgilio Brunet,* abogado del demandado Sr. Rosario.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El Comisionado de Instrucción de Puerto Rico, por conducto del Fiscal General, presentó en esta Corte una solicitud para que se expidiera un auto inhibitorio contra el Juez de Distrito de Arecibo y Víctor Rosario ordenándoles que se abstuvieran de nuevos procedimientos en el caso pendiente ante la corte entre Rosario y el Comisionado, civil núm. 2739, apelación interpuesta de acuerdo con la Ley 29 de 1931, sección 4 (pág. 313).

El auto fué expedido, celebrándose la vista el 13 de enero último. Comparecieron el peticionario por su abogado y el demandado Rosario por el suyo. Se admitió en evidencia el expediente original del caso civil núm. 2739 de la Corte de Distrito de Arecibo y se concedieron cinco días al peticionario para alegato y dos al demandado para replicar. En enero 18 quedó el asunto definitivamente sometido a la decisión de la corte.

La cuestión a resolver es la de si la ley invocada—Ley núm. 29 de 1931—otorga o no facultad a la corte de distrito para conocer de la apelación que para ante ella entablara Rosario contra cierta resolución del Comisionado de Instrucción.

La resolución está contenida en una carta que copiada a la letra dice:

"June 17, 1940.—Mr. Víctor Rosario, Arecibo, Puerto Rico.— Dear Mr. Rosario: After giving you a hearing on the charges preferred against you on January 8, 1940, and after careful consideration of the record of the case, I have come to the conclusion that the evidence presented warrants your suspension from the service. Therefore, you are hereby suspended without pay from January 8, 1940, to the end of the school year 1939-40; that is, to June 14, 1940. Furthermore, for the good of the service, you

shall be given an assignment for the year 1940–41 in a school district other than Arecibo.—Very truly yours, (Sgd.) José M. Gallardo, Commissioner of Education.''

Y la parte de la ley aplicable en su sección 4, que lee así:

''Sección 4.—El Comisionado de Instrucción podrá cancelar la licencia de cualquier maestro, director o superintendente de escuelas cuando, mediante una investigación practicada de acuerdo con el procedimiento que señala la ley, el tenedor de la licencia aparezca, a juicio del Comisionado, culpable de crueldad, incompetencia, insubordinación, o negligencia en el desempeño de sus funciones o conducta inmoral; *Disponiéndose,* que el maestro interesado tendrá derecho a establecer recurso de apelación ante la corte de distrito a que pertenece su domicilio dentro de un plazo de treinta días a partir de la fecha en que el Comisionado de Instrucción le haya comunicado la resolución cancelándole la licencia. Dicha apelación se tramitará radicando, en la corte de distrito correspondiente, un escrito conteniendo los fundamentos de hecho y de derecho en que funda el apelante su recurso. Este escrito será notificado al Comisionado de Educación, en la forma que la corte dispusiere y el Comisionado contestará la demanda dentro de los diez días subsiguientes a la fecha en que se le emplazara.

''Radicada la contestación, la corte fijará un día dentro de los diez subsiguientes a dicha radicación, para la vista del caso, y en este acto el Comisionado practicará la prueba en apoyo de su resolución y el apelante la suya, si la tuviere o fuere necesaria.

''Será deber de la corte de distrito que conozca del caso, dictar sentencia no más tarde del vigésimo día de haberse celebrado la vista; *Disponiéndose,* que la sentencia que recayere en dicho caso será final para ambas partes y contra ella no se admitirá recurso de apelación alguno.''

La Corte de Distrito de Arecibo ante la cual se planteó el problema no lo resolvió en definitiva. Después de oír ampliamente a las partes, declaró sin lugar la moción del Comisionado para que se desestimara la apelación por entender que no estaba aún en condiciones de decidir si carecía o no de jurisdicción, concediendo al dicho Comisionado quince días para contestar, sin perjuicio de que pudiera levantar posteriormente la cuestión de derecho suscitada por la moción.

Para ello se fundó en lo que sigue:

"(1) En julio 15 se radicó en este tribunal un escrito apelando de la resolución dictada por el Comisionado de Instrucción de Puerto Rico con fecha junio 17 de 1940, a virtud de ciertos cargos formulados al demandante Víctor Rosario, profesor de Artes Industriales, por conducta inmoral mientras estaba contratado como tal maestro en las escuelas de Puerto Rico. La apelación se funda en la sección cuarta de la Ley número 29 de 23 de abril de 1931.

"Se le concedió al Comisionado de Instrucción un término de diez días para contestar el escrito de apelación, y dentro de ese término presentó una moción solicitando que se desestime el recurso por los fundamentos que estudiaremos más adelante. La corte celebró una vista y recibió alegatos por escrito de ambas partes.

"(2) El fundamento del demandado para pedir que se desestime el recurso, es que la sección cuarta sólo autoriza una apelación, en el caso que se cancele la licencia del maestro al resolver los cargos; y que toda vez que la resolución dictada no dispuso tal cosa, la corte no tiene jurisdicción para revisar el fallo del Comisionado de Instrucción.

"Una lectura de la letra como fué redactada la sección cuarta de la referida ley número 29, sostiene a primera vista la objeción del demandado. No obstante, si se considera el hecho que la Asamblea Legislativa concedió intervención a las cortes de distrito para revisar el fallo del Comisionado cuando se formulen cargos a los maestros, esto parece indicar que la disposición literal contenida en dicho artículo limitando la apelación al caso de que la licencia fuera cancelada, pudo ser una concordancia con el comienzo de la misma sección concediendo la facultad de cancelar, y es dudoso que fuese la intención del legislador colocar al Comisionado en la única alternativa de cancelar o absolver.

"La omisión de no conceder en forma expresa el mismo derecho de apelación con respecto a cualquier otro fallo que declarara culpable al maestro y le impusiera un castigo de igual alcance moral y material que una cancelación de su licencia, pudo ser involuntaria por entender la Asamblea Legislativa que tal derecho estaba comprendido en el espíritu de la legislación. Si el Comisionado pudo salirse, como lo hizo, de la letra de la referida sección e impuso al apelante un castigo que no es una cancelación de la licencia y va tan lejos hasta penarle con el importe de los salarios, entonces la duda se hace más fuerte con respecto a si la apelación procede contra cualquier fallo que declare culpable al maestro.

"El apelante alega que si bien no se canceló la licencia en absoluto, se hizo definitiva la suspensión que había sido decretada, privándole de ejercer durante gran parte del año escolar, y que el Comisionado resolvió que el apelante no podría percibir los sueldos (facultad que no aparece de la sección cuarta), y que, además, en el fallo se le niega la oportunidad de seguir ejerciendo en la ciudad de Arecibo, donde ha adquirido el derecho de maestro permanente, según la ley 312 de 1938; y que dicha ley en su sección quinta sólo establece una suspensión temporal mientras se celebre la vista con motivo de los cargos.

"Esa ley de maestros permanentes, propuesta por el mismo Comisionado, ha cambiado mucho la discreción general que antes tenía el jefe del departamento de Instrucción con respecto a nombramientos de maestros bajo contrato, especialmente en materia de traslado.

"La reglamentación por ley sobre formulación de cargos y remoción de maestros, a pesar de la gran discreción que tienen los Comisionados y Superintendentes de escuelas en los Estados Unidos, ha sido declarada constitucional en muchos casos, aun cuando el nombramiento obedezca a un contrato. (*Chehock* v. *Independent School District of Marion*, (Iowa) 228 N. W. 585.)

"Alega también el apelante que la resolución del Comisionado equivale a una destitución por el tiempo en que se le privó de empleo y sueldo, si es inocente, y que resulta similar, como cuestión de hecho, a una cancelación de la licencia durante tal término; y que, por tanto, tiene el derecho de apelar.

"El argumento es un esfuerzo que tiende a convencer desde un punto realista, aun si estuviese al margen de la técnica legal. El Comisionado se agarra a la letra del artículo cuarto, que limita la apelación a casos de cancelación de licencia; sin embargo, no está despojada de lógica la contención del apelante cuando se agarra también a la letra de dicho artículo alegando que si la referida sección sólo le concede facultad al Comisionado para cancelar, si el maestro es culpable, cualquier otra resolución que dicte y que tenga el efecto de una cancelación o destitución, es un subterfugio para evitar que los tribunales revisen el fallo, según fué la intención de la Asamblea Legislativa. En otras palabras, que podría cometerse cualquier abuso con un profesor, con cualquier resolución drástica, que no se llamara una cancelación.

"La suspensión por sí sola no se saldría de las facultades de dicho artículo, si se considera a través de otras secciones de la ley escolar y de la misma ley sobre maestros permanentes. Cuando se

formulan cargos a un funcionario por conducta inmoral, generalmente se decreta una suspensión mientras se dicta el fallo; pero la imposición de una penalidad en cuanto a los sueldos cuando no se le destituye, y el obligar al maestro a salir de su domicilio donde tiene su residencia, y quizás otros intereses, podría implicar en determinados casos, un medio hábil para obligarle a renunciar, y el fallo tendría entonces el efecto de una cancelación.

"La licencia no es más que el instrumento para ejercer. Si el maestro se ve obligado a renunciar, se encuentra en igual condición que si se le hubiese cancelado la licencia. La sección 23 de la ley número 29 de 1931, dice lo siguiente:

" 'Esta ley será interpretada y aplicada en la manera que resulte más liberal y propicia al aseguramiento de los derechos de que en la actualidad gozan los maestros.' "

Cita el Juez de la obra Corpus Juris, tomo 56, páginas 398 y 300 algunos párrafos que resumen jurisprudencia que si bien guarda relación con la materia no resuelve el punto exacto aquí envuelto, y continúa:

"Colocada la cuestión en estas condiciones, el punto de si tenemos jurisdicción, es dudoso. No tenemos interés en intervenir en la discreción del Departamento de Instrucción, y seríamos los primeros en aplaudirle por medidas drásticas para imponer moralidad en todo lo que se relacione con las escuelas, pero tampoco queremos evadir la responsabilidad de actuar en protección de los derechos del magisterio, si la ley nos concede tal jurisdicción.

"Es difícil que pueda resolverse el punto suscitado sin oír la prueba sobre los hechos y conocer el verdadero perjuicio que sufriría el apelante si aceptara la resolución del Comisionado y se viese obligado a ejercer en un municipio distinto. Tal prueba podría determinar si el traslado equivale a una renuncia obligatoria, por serle imposible cumplirlo; en cuyo caso tendríamos algo similar a una cancelación de su licencia para ejercer. En tales circunstancias, el derecho a apelar sería, por lo menos, implícito.

"Por otra parte, pudiera ser que la evidencia que tuvo ante sí el Comisionado fuera de tal naturaleza, que el traslado sea algo indispensable al buen servicio, y entonces podríamos concluir que si después de aprobada la ley de maestros permanentes el estatuto no confiere al Comisionado la facultad de trasladar, por no haber reglamentación al efecto, la responsabilidad que le impone la Carta Orgánica con respecto a la instrucción en Puerto Rico, haría quizás ex-

tensiva esa facultad de traslado en bien de los intereses públicos; pero para llegar a esa conclusión extrema necesitamos conocer cuál fué la prueba sobre la conducta del maestro. De otro modo, la ley sobre maestros permanentes, podría ejecutarse en forma caprichosa.''

Hemos transcrito la opinión de la corte sentenciadora para dar color al asunto y porque revela un cuidadoso estudio del mismo y el deseo de hacer justicia, pero no podemos estar conformes con el criterio que la informa.

La ley es terminante. Comienza otorgando al Comisionado el poder para cancelar la licencia del maestro por los motivos y en la forma que establece y luego dispone que el maestro ''tendrá derecho a establecer recurso de apelación ante la corte de distrito . . . dentro de un plazo de treinta días a partir de la fecha en que el Comisionado . . . le haya comunicado la resolución cancelándole la licencia.'' Y dispone algo más la ley. Prescribe que la sentencia que recayere en la apelación ''será final para ambas partes y contra ella no se admitirá recurso de apelación alguno.'' Quiere decir que el caso termina por completo en la corte de distrito.

Se trata, pues, de un recurso especial otorgado dentro de una ley también especial, que sólo a cancelaciones se refiere. Y como el Comisionado no le canceló su licencia al maestro y ello consta de modo terminante de la resolución que sirvió de base al maestro para establecer la apelación, claro es que tal apelación no procede, careciendo de autoridad el juez de distrito para resolver la cuestión planteádale dentro del procedimiento elegido por el maestro. Los términos de la resolución del Comisionado son tan claros y precisos, que es innecesaria la ulterior investigación ordenada por la corte.

Hemos puesto énfasis en el carácter especial del recurso de que se trata y en sus limitaciones porque no es éste el caso de un recurso ordinario al que pudieran acogerse las partes interesadas a virtud de una interpretación liberal de la ley y siguiendo la tendencia moderna de abrir las puertas de las cortes para hacer justicia eliminando tecnicismos (*Escartín v. Comisión Policía Insular*, 47 D.P.R. 502) sino el de un pro-

cedimiento decretado para cierta clase de casos cuya resolución final se encomienda a las cortes de distrito.

Además el que ese procedimiento especial no proceda, no implica que se niegue al maestro su derecho a ventilar su asunto en los tribunales en propios casos. Si se procedió con él arbitrariamente, si se le privó de su propiedad sin facultad ni motivo, otros recursos tendrá que le permitan no sólo el ejercicio de su acción ante las cortes de distrito si que ante este propio Tribunal Supremo.

*Debe, en su consecuencia, ordenarse en forma definitiva al Juez de Distrito de Arecibo y al maestro Víctor Rosario que se abstengan de nuevos procedimientos en el caso núm. 2739 que será sobreseído.*